We have two cases this afternoon and we are back to something that we thought we had given up at the end of last spring and that is Zoom oral arguments but we thought it best for everyone's sake that we do so, especially when we've found that a number of council have are really concerned about coming into a courthouse in person while the Omicron virus is out and about among us. So with that I hope we haven't inconvenienced anyone. We have first case is number 21-1764 Merck and Co v United States Steel Workers of America Local 4-595 Ms. Pave and Mr. Spiegel. Ms. Pave whenever you're ready. Thank you, Your Honor, and I would like to reserve four minutes for my rebuttal, if that's all right. No, that's fine. We sort of ignored the clock anyway. Okay. All right. Understood. Good afternoon. You don't need to encourage them. I promise I'll try and be good Judge Roth. I promise. Thank you. Ms. Pave, anything that I do in life has often been done as a result of my mentor being Judge Roth for the last 50 years, but that's okay. I will do my best to cleave unto the time. Good afternoon and if it please the court. My name is Margo Pave and I represent the appellant in this matter, the Steel Workers Local here. The district court opinion in this case must be reversed and the award of the arbitrator upheld because that award was based on a rational interpretation of the collective bargaining agreement. If I just ask you on the rational interpretation, I look at article 21 of the quote, all prior written and verbal agreements, past practices, et cetera, that clearly establish well, past practices, memoranda or understanding or other agreements. Doesn't that past practices deal with your case? No, actually, your honor, it does not. As the arbitrator found and frankly, as Merck itself indicated in its appellee brief on pages seven and eight, when you look at article 21, the first clause, and this is actually how Merck described it, article 21 of this 2012 CBA known as the zipper clause, which both quote, extinguished the past, and then they quote clause one, except for those side letters, written agreements, past practices, verbal agreements, and any other agreement, which are set forth in the side letter, other agreement book, all prior written and verbal agreements, past practices, memoranda of understanding or other agreements shall have no force in effect. And then Merck goes on and two, directed the future. And then they quote clause two, no agreement is binding on the respective parties unless in writing and signed by a representative designated by the party with And the view that the arbitrator agreed was that article 21, as regards practices, past practices, extinguished any practices that existed prior to the effective date of the 2012 CBA, but that it did not address existing practices, that is practices established during the life of the 2012 CBA. But wait a second, there are two problems. One of them is a procedural one, which is this is the you float this theory for the first time in your reply brief, this is not the way that the arbitrator put it in contrasting the language of one with two. And second, even if we overlook that forfeiture problem, you know, that paragraph repeatedly treats practices as an example of agreements, it doesn't contrast practices with agreements, the whole point of one is to set aside all all efforts to try to freeze things in amber that aren't spelled out in this agreement. So how have you preserved this argument? And how is this argument consistent with you know, 21 being a zipper clause to wrap up all the agreements, written, oral, past, present? And none of them will be binding unless written and signed. And by on the respective parties, I don't see any writing and signing. All right, I will, I will start with Judge Phoebus and then Judge Roth sort of in the order that they that's fine. I'm on the on the waiver issue, Judge Phoebus. And I think we address this in our opposition to their motion for Sir reply. This is not first of all, this is not in our view, a new argument. The question throughout the litigation has been in the union has argued that the award has to be enforced because the arbitrators interpretation of Article 21, all of Article 21 is fully rational, both before the district court. And in our initial brief here, we argue that the arbitrator rationally concluded that as regards practices, Article 21 bars only prior not current practices, and that the articles written requirement applies only to agreements. And as we pointed out, as the arbitrator pointed out, practices are not agreements. Um, and we also pointed to arbitration cases, such as the havoc industry cases in the Freyhub trailer case, that similarly concluded that language of this nature, such as that in Article 21, did not apply to practices established. And I would point you to in the district court. I'm sorry, I was going to just point you to where we go ahead, go ahead. In the in the district court, our opposition to Merck summary judgment at seven, eight, and in our initial appellate brief at 1520. But in addition to that, Judge Beavis, and again, I think I got into this in our opposition to their certify motion. It is in their appellate brief, that they make these very state get into the specifics of clause one and clause two. Indeed, their appellate brief has sections titled, the arbitrator ignored the plain language of Article 21 one. And the arbitrator to make specific arguments about the meaning of each clause and how they interact. And so it was wholly proper for us in response to those arguments, to respond to them. And to say, actually, what you say about the plain meaning is incorrect. You say he ignored the plain meaning of Article 21. One. No, he didn't. You say he ignored the plain meaning of Article 21. Two. No, he we simply responded to that. Well, wait a second. If you were trying to defend the arbitrator's own reasoning, that might be one thing. But, you know, we can affirm on the grounds below, you're responsible for laying out in your opening brief, what your theory of attack is, and your your, your plain meaning argument is, is one that is not in the arbitrator's opinion. So, so there's a forfeiture issue. But let's get past forfeiture. If we get to the merits, why isn't Judge Roth, you know, who's basically agreeing with what I was saying, why isn't she correct that the whole point of this is to say, it's got to be in writing, it's got to be signed. This clearly is not signed and in writing. So when you call it a practice, you're saying this is something that both parties are allowing to happen. Well, isn't that an agreement to let it happen? So my response to both of those questions, your honors, is that the answer to what Article 21 is, and again, I think it's interesting, if you look back at Merck's own brief at pages seven, eight, they endorse this, is that Article 21 shows a fresh start by the parties with the 2012-2015 CBA. As Merck itself says, first section says anything that existed before, practices, memoranda, anything else are gone, unless they're put into the side letter book. Then the second part of Article 21, Clause 2, says during the time of the CBA, any agreement that the parties choose, any additional agreements that the parties choose to enter into, must be signed with signatory authority. That is a different question from whether the company and the union, by their behavior, can establish a binding practice. Okay, wait a second. Your argument presupposes that practices are not agreements, but the language of 21-1 says agreements, practices, verbal agreements, and any other agreements. So it was the second clause of 21-1. Well, doesn't the second clause require that if you're going to have a practice, and you've got to have an agreement in writing before it's binding? So, Your Honor, with all due respect, the position of the arbitrator, and our position as well, is that it does not require that. And remember, the question here is not, with all due respect, how you or I would necessarily read it initially. It's, is there any way for the court to read it such as that the arbitrator did? Because if there is, the award has to be upheld. Again, it's minimal rationality, not preferred reading. And we all know that, but I'm just reminding you. Understood, but you are challenging the district court's decision to vacate. So we have to focus on the grounds in which you challenge. We have this issue of what's preserved, but the arbitrator is not allowed to pursue his own rough brand of industrial justice, is not allowed to disregard the limitations of the agreement. We made it clear in Monongahela. We made it clear in ILU. So if the arbitrator is overriding a limitation that is fairly written into 21-1, that's a different matter. You're right, you know, that we have to give a lot deference and a lot of wiggle room to the arbitrator, but I think Judge Roth has laid out a reason to be concerned that the practice, the limitation on practices is quite, it's written into the way 21-1 is written as well. It's not excluded from 21-2. Well, and this is again, with all due respect, where I would disagree, Judge Bibas, again, based on basic rules of based on contract interpretation rules, it is because as this court and just about every other court has always pointed out, you can't ignore when parties to a contract use one word in one place and not in another. If agreements, if the parties understood agreements to encompass practice, then why would they have used the word practice in clause one? Because they have a residual or other agreements twice, any other agreement, suggesting that any other is the catch-all that includes things like the side letters, written agreements, past practices, or verbal agreements. Basically, when you look at one, it's saying all prior and verbal agreements, past practices, memoranda or understanding or other agreements. And what Judge Bibas is saying or other agreements indicates an intent that past practices is included a subset of agreements. And again, I understand that that is Judge Bibas's interpretation. And again, I'm not sure that I would necessarily disagree. Why is that the wrong interpretation? Because as the art, because a number of reasons. First of all, again, the parties to this contract, okay, in clause one, when they wanted to say practices, they said practices. In clause two, they chose not to. What they said was everything that happened before 2012, all of it, any of it, we're not going to have it unless right now in 2012, we agree to put it in the side letter book. But as going forward, as to the future, as Merck put it in their brief, as to the future, they only spoke to agreements being binding. And again, collective bargaining agreements are not the same as contracts. And one of the things the collective bargaining agreements are agreements and agreements are contracts under contract law. What's what are you trying to tell me is different here? Well, the most basic difference is that as the steelworker trilogy recognized and as your court, of course, is also recognized, CBAs do encompass practices, even if it's not even those practices are not written, these are these are hard negotiations, at least my experience has been from private practice, these, they go through everything. And if the CBA in 2012, says that the only things that are exceptions, if you will, are inside agreements, and the side agreements do not include four hours, time off for an anniversary luncheon, then it's not there. So then the question going forward, it has to be some type of agreement, that a practice once upon a time can now be resurrected, because it wasn't there in 2012. But maybe now it's there in 2013. But what the second provision says, if you're going to do that, if you're going to resurrect it, bring it back to life, you have to have it in writing, signed by the parties, and you're not there. Well, and the arbitrator, I believe, and again, remember, the rule here is, if there is any way to read this contract, it doesn't have to be the way the arbitrator read it. Right? What matters? The rule stated in Nagila Valley is that you give great deference to the arbitrator. But there are confines of the agreement, the authority, or whatever it might be, the in this case, the CBA, and you have to not impose your own idea of what should be onto that, if it's not in if it's not otherwise in the agreement. So the 2012 CBA says, the arbitrator shall have no power to add to subtract from or modify any of the terms of this agreement or any agreements made supplementary there to here to sorry, which is which is a is a considerable limitation on the power of the interpretive license of the arbitrator, I think. Well, if I'll, I'll respond to you first, Judge Roth. In fact, the arbitrator did not add language. Again, the the arbitrators reading of the zipper clause is based on what is here and practice is not as he noted, under labor arbitration practice is not necessarily an agreement. Regards the other aspect of the district court decision, which you judge Roth might have been referring to. So the district court also concluded the exceeding authority aspect of it, because in the court's view, the arbitrator had fashioned a new right into the CBA out of whole cloth. And I think that may be what you are referring to, Judge Roth, the idea of adding language. But again, that assumes that's treating a CBA the same as any other contract that you look only at the four corners. But again, that is not true. And if the district court was correct in that conclusion, then by that logic, no arbitral award based on practice would ever be allowed to stand. You've got a fair point, Ms. Pave that in general and labor arbitration, we look more at the law of the shop floor practices in general, but this is still a matter of contract and the extent or contours of doing that can be affected by contract. One thing that troubles me is you're arguing as if the arbitrator had rooted this in the reading of Article 21. But when I look at Appendix 30, the key page in the arbitrator's reasoning, it's not grounded in the wording of the zipper clause. It's grounded in El Khoury and El Khoury, how arbitration works, sixth edition. It's a very general understanding of what generally happens under such contracts, not one that has the specific exclusion of these kinds of practices as among agreements. So I'm wondering, even if you are right, generally about CBAs, how can we uphold the reading of this particular CBA when page Appendix 30 is not grappling with this contract at all as point to what El Khoury and Khoury say about other arbitrations? So the simple answer to that, Judge Bibas, is that as this court has underscored in ARCO polymers and in Ludwig Arnold, what matters is, is there any way that the award could be upheld based on the language of the contract? It doesn't matter if the arbitrator himself did that or not. As you said in ARCO polymers, given that no reasons must be given for an award, the courts are not free to determine which finding the arbitrator relied on. Rather, the court is limited to inquiring whether the arbitrator could possibly have made a contract interpretation that supports the award. So again, the question isn't, in my view, well, look at the award. Did the arbitrator say X, Y, and Z? But rather, could he have interpreted the contract in such a way to support the award? And again, it is our position. You're making us a rubber stamp for whatever an arbitrator does. And we've already said that we're not going to do that. Your point is, is there any way that a practice could be brought back into play? The answer to that question is yes, there is a way. You have a written amendment to the CBA in 2013, 2014, or 2015 that says we missed this before. Instead of two hours time off, you get four hours. You know, I would love to go to one of those four-hour lunches. So Judge Ambrose, I can respond to your question. Go ahead. May I respond to your question? I said you can answer that, and then we'll get you back on rebuttal. Okay, thank you. I just wanted to respond. If you look at the issue again, and it's interesting because it's the case that Merck itself cited too, in Armstrong, right, that was the language that our CBA doesn't have, right? Their CBA specifically said existing practices also don't bind. We don't have that language. And so I would say to you, that is that clear distinction where the arbitrator is not, as you put it, just imposing his own view. If the parties wanted to say not only practices before 2012, but also practices during the 2012-2015 term are not a basis for action, then they should have said existing and not just past. Thank you. Before you sit down, just dumb question time. I'll try. Why wasn't this settled quietly without having a full-blown court proceeding? I mean, we're talking about, I said that one of my colleagues reminds me of, among academics, you know, the fights are so big because the stakes are so small. I mean, in the scheme of things, this is not a major issue. Why wasn't this resolved quietly? I don't, I do not know. And obviously the record doesn't show it. I just do not know the answer to that, your honor. All right. We'll get you back on rebuttal. Okay. Thank you. Mr. Spiegel. Good afternoon, your honors. This is Seth Spiegel for Apelli Merck and Company. I'm going to ask you a segue from the last question. Any ideas as to why this didn't settle? I think there have been, you know, attempts by the parties to settle, but the party, you know, and I think that they're ongoing now, you know, knowing that each side has something to gain and something to lose, but the parties just haven't been able to on the, on the terms of the settlement. You know, so we're, we're all hoping that the case can settle, but it hasn't. And in the meantime, you know, we're continuing litigation. How about three hour lunches? Three hour, right, right. I don't, one question I have is that in, in your surreply, you argue that the union waived the article 21 does not ambiguously reliance. I'm sorry. Can I, can you say that again? In your surreply, which we allowed you to file. Sure. You argued that the union waived the argument that article 21 does not unambiguously bar reliance on the prior practice. But we allowed you to file the surreplies. So in what way was Merck in any way prejudiced if we considered the union's argument here? Well, the, the surreply says that the first time that the, that the union raised any argument relating to the interplay between number one and number two, article 21 one and article 21 two was the union's reply brief on appeal. It wasn't raised in the article 21 two throughout the entire proceeding. The first, you know, the first time that the union brought this up at all from arbitration all the way through appeals and is in its reply brief in, in reply brief on appeal. It's just, it's not anywhere else. Certainly not before the district court. Let me hear your response to Ms. Pave who, who argued insistently that in fact they had raised this in the district court. I don't see it. I don't see it. She said something about seven and the eight. I just don't, I mean, I wrote all of the briefs in this matter. We argued, Merck argued article 21 two extensively throughout the summary judgment proceedings. And I don't recall any argument by the union, even touching on article 21 two, let alone the argument that, well, one contains practices and agreements and the other one contains agreements. So I, that, that just wasn't there in the district court at all. So under the, and, and the, you know, the, the union had every chance in the world to raise that, especially considering that even though the district court didn't rely on it, Merck certainly argued 21 two before the opportunity to argue anything about 21 two. And without a doubt, didn't have anything before the district court on this one contains two words and the other one contains one word. It's just, it's just, wasn't, wasn't there at all. And, you know, the third circuit is pretty clear that, you know, the, the, the appellate court isn't permitted to reverse a district court's decision on grounds that were waived for the district court. And, and whether you're looking at a waiver argument or a forfeiture argument, which suggests sort of an inadvertent omission, you know, even under a forfeiture analysis the district, the court of appeals wouldn't address the argument absent some sort of public interest or manifest, manifest injustice that will result if the court didn't address it. So this, this notion about, I mean, the fact that, that the union filed a surreply, and then I'm sorry, that the, the union raised it for the first time on the reply brief. And then, and then, and we let you reply. But so my question to you is how were you prejudiced? We were prejudiced. Well, the, the, the, the policy against reversing a district court decision that on grounds not raised for the district court, that's a, that's a policy that the court would be violating. But, you know, how was Merck? Right. If we allow you to, you say, look, we got surprised. We'd like to respond. We immediately granted it. And you did respond. So how are you prejudiced by not getting your arguments before us? Well, first of all, the, the, the surreply, you're saying you shouldn't have had to argue it in the first. Well, we certainly shouldn't have had to argue it in the first place, but the surreply that we filed, you know, we didn't really have, Merck didn't have any idea when this panel, this would go to the merits panel or when the argument would be scheduled. So it was sort of a little bit of a rush job because we were trying to get it in as soon as possible. So if we had a regular, if we had a chance to flesh out this type of issue before the district court, I think that certainly Merck would have been able to do a little bit more or a lot more legal research than it has already. And so I think that the surreply was there just to, to flag the issue before the court that it was waived. And then the, you know, the other, the other argument being that the union's argument about the one versus 21.1 versus 21.2 doesn't, it lacks merit, but I, you know, if we had more time before the district court to contemplate all of this, Merck likely would have been able to put together a more comprehensive analysis than it did when it was surprised here in the court of appeals by having to respond to argument that just had never appeared before in this case. Right. Well, when we deal with the merits, your argument is, is twofold as I understand it, that the, that the arbitrator imposed on this agreement, something that wasn't in it, that he exceeded the scope of his authority respect to the, the actual word contract. Right. So what the arbitrator did was, well, first of all, we have article 21 has two provisions, like we've been discussing, it has 21.1 and 21.2 and the arbitrator didn't even talk about 21.2 and the arbitrator and the the district court, the arbitrator found that because this practice supposedly continued into the term of the CBA, that article 21.1 which extinguished the practice just, you know, it was invalidated or the union didn't have to abide by article 21.1 and the district court said no, article 21.1 unambiguously extinguished this practice because the parties didn't take advantage of the affirmative mechanism to preserve this practice, which was to place these things, to place this practice in the book. So, so this, this notion about, well, the practice continued into the term of the 2012 CBA, that, that, you know, enforcing that practice, it ignored the article 21.1 provision extinguishing those practices. Like, you know, it doesn't make, the court said, well, notwithstanding that this practice is extinguished, it really isn't extinguished because it continued into the, the 2012 period. So that's just disregarding article 21.1. But it also violates article 14.2C's prohibition on adding, subtracting, or modifying the contract. The, the, however you want to look at it, whether the arbitrator weakened or eliminated the article 21.1's provision extinguishing this practice, or it added another exception to article 21.1 where anything that might continue into the, into the new period renders article 21.1 inapplicable. That, an arbitrator taking the opportunity to basically ignore the zipper clause in that way, article 21.1 is, it's, you know, it's an excess of, of his authority under the, the terms of the CBA itself. So here the district court is talking, it made its decision strictly in terms of article 21.1. But then we also have article 21.2, which says that, you know, an agreement needs to be in writing, signed by the parties. And this art, this, this notion about, well, one contains practices and agreements, and then the other one contains only agreements. So it does, so, so practices aren't included, you know, what, what we're saying, what we said in our surreply, which the court graciously accepted is that, you know, both practices and agreements go into this side letter book under 21.1. They're treated the exact same way. The, the, the zipper clause is called other, I think it's called other agreements and past practices. So the parties intended to treat practices and agreements the same way. And, and the case law that we cited both before the district court and in this court, they equate the term, these cases equate the term practice and the term agreement. So whether you're looking at article 21.1 or article 21.2, the, the, the, any practice or agreement to provide four hours for this anniversary lunch was required to have been at a minimum in writing. And there was no, there was, there's just no, there was no writing here. So the, whether you're thinking about article 21.1 or article 21.2, both there, you know, being independent bases to uphold the district court's decision, because as we all know here, the court discourse permitted to affirm on any basis in the record. Now, Mr. Spiegel, Ms. Cave argues with some force that, you know, zipper clauses are known and our standard review is still deferential. We're supposed to hypothesize how this could have been upheld. Isn't the prevalence of law in the shop in collective bargaining agreements, such that we ought to read article 21 as preserving some, some room for it. I mean, it is, it's a, it's a common aspect of, of, of labor arbitration. Well, meaning a common aspect is to preserve practices in a CBA. Is that, is that, well, generally short practices are, are preserved in a CBA, but not if you have a zipper clause that extinguishes them. And that's what we have here. She was citing Arco polymers and Armstrong. Do you think those cases are, are distinguishable? They're the ones that say, well, if there's any, any way to, well, no, they are distinguishable because here there's no rational interpretation of the zipper clause to, to reflect the art, enforcement of a practice that twice over is, is, is not permitted under the CBA. You know, you still have to, you know, this, this, this, you know, the union likes to talk about how, well, this is just an interpretation and this court and the arbitrator can interpret the contract any way that he wanted to. But obviously the courts still have to look at interpretation. And if the interpretation ignores the plain language, or if the interpretation exceeds the arbitrator's authority, then the court has to vacate the award. So whether it's an every, every award is an interpretation of an agreement, but in here, the interpretation exceeded the arbitrator's authority and ignored ignored the plain language of the zipper clause. Any further questions for my colleagues? No further. All right. Thank you. Ms. Pave. Ms. Pave, you're muted. Of course I am. Thank you, your honor. I just have a couple of points in response. In response to, I guess, the most recent thing that Mr. Spiegel said in answer to Judge Bevis's question, the, as we pointed out the Armstrong case on which Mr. Spiegel relied, I think it's a very good example of what Judge Bevis was saying. The, if the rational distinction here is that the parties did not bar reliance on practices existing during the time of the 2012 CBA. What they said was things prior were not pulling forward, but this is a new day. And, and again, so we, we would argue that that is a very rational basis for the arbitrator to make that decision. And in regards to the issue of whether the word agreement automatically encompasses the concept of a practice, I would say two things on that. First of all, labor arbitrator, labor arbitrators and labor arbitration awards recognize that a practice, the word practice, the concept of a agreement, and indeed the arbitrator himself acknowledged that. Furthermore, in this case, the parties clearly understood it differently because again, if the word agreement encompassed everything, including practices, there would have been no reason in clause one for the parties to have gone on and on about all the different things from the past that they were getting rid of. All they would have had to say was you made that argument before and we understand it. Okay. Thank you, your honor. Assuming, assuming that we are not talking about forfeiture of an argument in your reply, but your reply brief does say for the first time that article 21 does not ambiguously bar reliance. And therefore, if it doesn't unambiguously bar reliance on a practice, that practice is allowed. If that's such a good argument, again, I'm not saying it's forfeited, but why didn't you make it before? Well, again, our position has always been that again, minimal rationality. No, no, no. But why didn't you make that? I understand. But why did you wait to your reply brief to make that argument that you're now saying is probably- Because it was in the absolutely brief that, so our initial argument to this court was the arbitrator was correct. Practices don't always mean agreements. We did point that out. He was also correct that they did not bar the collective bargaining agreement does not as practices during the term of the contract. Then we got the appellee brief. Ms. Pave, the portion you keep setting in the brief is pages seven to eight. I looked it up. It's the procedural history section. No, when I cited seven, eight, that's in Merck's brief. I was talking about Merck's brief in which they themselves say, the reason I pointed out the Merck brief to you, Judge Bibas, is they themselves say that the way you look at article 21 is that clause one extinguishes the past. But this is a description of the procedural history. It's not their argument. Yes. But then when you go on to the rest of their brief, and I think I pointed this out in our, I know I cited it in the reply brief, they have one entire section entitled, the arbitrator ignored the plain language of article 21-1. Then they have another section entitled, and that's at page 20, or page 14 of the brief, page 20 of the document. Then they have another section titled, and this is at page 22 of their brief, page 28 of it as filed, the arbitrator ignored the plain language of article 21-2. They also, in their argument, and again, I believe this was cited both in the reply and in our opposition to their motion for surreply. Let me find the exact page that, give me one moment, if you will, where they specifically talk about, I'm sorry, let me find it for you. Yes. In their summary of argument, and then because this is carrying through to the rest, where they identify how the two clauses interact with each other. They also talk about that during the argument where they link the two and talk about how they work together. We responded to that. If they're going to say the plain language says this, and the plain language says that, an obvious response is you use different language in the two clauses. What I'm troubled by is you're suggesting that anytime someone files an appellee brief, he has to be careful not to make a stronger argument than necessary, because otherwise, he's then opening the door for the reply brief. That would really upend our practice to suggest that when someone adds in more than maybe the bare minimum he actually needs to make, that he's licensing the other side to go further and say, oh, I really should have put it this way in our opening brief. That's a matter of waiver. We'll just leave that aside. Okay. I guess my only response to that, Your Honor, is the whole purpose of a reply brief, in my understanding, is to respond to whatever arguments are made by the appellee. They're not simply to reiterate the arguments that the appellant initially made. The appellee makes an argument, the appellant has to reply to it, and that's what we did, Your Honor. Let me go back to appendix page 30. This is the arbitrator. He says that he tries to get around, or he does, in his view, get around the Shipper Clause. It has, quote, no magical dissolving effect upon practices or customs, which are continued, in fact, unabated. So did the practice of four-hour luncheons continue unabated after 2012? So until the factual finding of the arbitrator is that until the particular instance that was grieved, yes, they did continue unabated until, I believe it's Mr. Fitzpatrick. Was that a finding that he made, that there were four-hour luncheons in 2013, later in 2012, 2013, and only when you had this particular luncheon did all of a sudden this come up as an issue? What he, if you look at, I believe it's appendix 29, the previous page, he does have a finding. The record reveals that prior to November 2013, if an employee elected to have an anniversary luncheon, he or she would be given four hours of paid time, and that is, November is when the Let me pick up on Judge Ambrose's point. So this CBA takes effect May 1, 2012, and the practice continues to November 2013. So that's a year and a half. We're not talking about multiple contracts. It's just continuing for a year and a half into one CBA. But the authority that the arbitrator cites is customs which are continued, in fact, unabated, and which successive contract periods, plural. Maybe that might be right if we're talking about something that lives on for a couple more contracts. But we're talking about a year and a half within one contract. So how does that authority, I realize you're going to say that, well, we could hypothesize a different way to support it, but if you look at the authority he actually cited, does that actually support what he did here? So I would argue that given the admittedly low standard, if you want to call it that, of minimal rationality, I would argue that it does, Your Honor, particularly because as he and as I interpret the Article 21, the parties are permitted to establish a practice during the time of the CBA, and the CBA was 2012 to 2015. So what you're looking at at this point is at least half of the contract period, this has been going on. So I would argue that that's a perfectly rational conclusion. But it's half of one contract period. You're not arguing that each six months or each year counts as a contract period and year. It's half of the three-year contract period. No, the contract period is the period of the contract, the term of the contract. Right. Okay. Well, thank you very much. Thank you to both counsel for well-presented arguments, and we'll take this matter under advisement. Thank you again for being with us today.